**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Martha Mogaji

v. Case No. 20-cv-1067-JL

New Hampshire Department of Revenue Administration; and Nancy J. Smith, General Counsel

**REPORT AND RECOMMENDATION**

Plaintiff Martha Mogaji, appearing pro se and in forma pauperis, has sued the New Hampshire Department of Revenue ("DOR") and DOR General Counsel Nancy Smith, claiming that they violated her federal constitutional rights by rejecting her application for an emergency business loan made available through the state during the COVID-19 pandemic. The defendants move to dismiss the complaint (Doc. No. 6), arguing that the plaintiff: (1) lacks standing; (2) has misjoined Attorney Smith; (3) has asserted claims barred by the Eleventh Amendment and qualified immunity; and (4) has otherwise failed to state a claim for relief against either the DOR or Attorney Smith. The defendants' motion has been referred to the undersigned Magistrate Judge for a Report and Recommendation. See LR 72.1(c). For the reasons that follow, it is recommended that the district judge grant defendants' motion to dismiss because the plaintiff lacks standing to sue. In the alternative,

plaintiff has failed to state a claim for relief against either defendant.

## I. Factual Background

### A. The Self-Employed Livelihood Fund[1]

In late March 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was enacted into federal law. See Pub. L. No. 116-136, 134 Stat. 281 (Mar. 27, 2020). Pursuant to the CARES Act, the State of New Hampshire ("State") received funds to be used for "necessary expenditures" incurred as a result of the coronavirus public health emergency ("Coronavirus Relief Funds"). See 42 U.S.C. § 801. Among other things, the State could use Coronavirus Relief Funds for expenditures "incurred to respond to second-order effects of the emergency, such as by providing economic support to those suffering from employment or business interruptions due to COVID-19-related business closures." U.S. Dep't. of the Treasury, Coronavirus Relief Fund Guidance for State,

[1]The relevant legislation is both attached to the plaintiff's complaint and is a matter of public record. The court therefore considers it in analyzing defendants' motion. See, e.g., Goodall v. Worcester. Sch. Comm., 405 F. Supp. 3d 253, 259 (D. Mass. 2019) ("[T]the Court may take judicial notice of statutes, regulations and formally enacted government policies and procedures."); see also, Foley v. Wells Fargo, N.A., 772 F.3d 63, 68 (1st Cir. 2014) (relying on documents attached to the complaint to describe factual background of case).

Territorial, Local, and Tribal Governments, 86 Fed. Reg. 4182 (Jan. 15, 2021). In or around early July 2020, the State allocated a portion of its Coronavirus Relief Funds into a fund designated as the Self-Employed Livelihood Fund ("SELF"). See Gov.'s Office for Emerg'cy Relief and Recovery ("GOFERR"), New Hampshire Self Employed Livelihood Fund (SELF) Frequently Asked Questions, https://www.goferr.nh.gov/covid-expenditures/new-hampshire-self-employed-livelihood-fund-self/new-hampshire-self-employed (accessed July 26, 2021); Compl. (Doc. No. 1) at 7 (unmarked attachment from GOFERR's website concerning "Information on the Self-Employed Livelihood Fund"). SELF was established to provide economic support to "self-employed" businesses through the distribution of grants of up to $50,000 for qualifying applicants. GOFERR, supra; Compl. (Doc. No. 1) at 7. To qualify for a SELF Grant, applicants had to meet the following criteria:

- Be a for-profit business with its principal place of business in New Hampshire;
- Have been in operation for at least one year before July 17, 2020;
- Have total 2019 gross receipts of less than $1,000,000;
- Not be in bankruptcy;
- Not have permanently ceased operations;
- Not have received a Main Street Relief Fund Grant; and
- Not have any non-owner employees during any time of year.

Id.; Compl. (Doc. No. 1) at 9 (unmarked attachment showing the same qualifying criteria). Of particular relevance to this

case, applicants also had to anticipate a loss of gross receipts from 2019 to 2020 due to COVID-19 in order to qualify. Id.; Compl. (Doc. No. 1) at 9.

The SELF Grant application period opened on July 6, 2020 and closed on July 17, 2020. Id.; Compl. (Doc. No. 1) at 7. Applicants were informed that even after submitting their applications they could make changes up until the application period closed on July 17. Id. ("How do I fix errors I have identified in my business's Grant Application?"). Applicants were also provided with information concerning how to appeal ineligibility determinations. Compl. (Doc. No. 1) at 7. Those instructions included the following notice:

> ***Please note:*** **The [Department] cannot consider appeals regarding any dollar amounts that you reported on your application*.*** The State is unable to allow revisions to a business's gross receipts or COVID-19-related grant and/or loan amounts so as to not jeopardize program integrity or any of the State's CARES Act funding.

Id. (bold and italics in original).

B. Plaintiff's Claims

According to the complaint, Ms. Mogaji applied for a SELF Grant but did not receive one. Id. at 4. In her application, Ms. Mogaji indicated that her business was not anticipating a loss of gross receipts from 2019 to 2020. Id.; see Order (Doc. No. 3) at 2. As such, the DOR determined she was ineligible. Compl. (Doc. No. 1) at 4, 10. Ms. Mogaji claims that she

"incorrectly reported" that her business was not anticipating a gross loss of receipts in 2020 because of a "typographical error." Id. She further asserts that she reported the error to the DOR on or around July 25, 2020 and in doing so provided evidence that her business "was experiencing losses" and that COVID-19 "made it worse." Id. Based on this new evidence and her purported typographical error, Mogaji asked the DOR to reverse its denial and award her a SELF Grant. Id. The DOR denied Mogaji's appeal. Id. at 11.

On October 26, 2020, Ms. Mogaji filed this action, asking the court to order the DOR to provide her with a SELF Grant. Compl. (Doc. No. 1) at 5. She appended bank statements and tax returns to her complaint, which she claims demonstrate her entitlement to a SELF Grant. See id. at 12-15 (bank statements), 16-28 (tax returns).

The court preliminarily reviewed the complaint in accordance with LR 4.3(d) and 28 U.S.C. § 1915(e)(2). Based on that review, the court liberally construed the complaint to "allege[ ] that the [DOR] and Attorney Smith violated [Ms. Mogaji's] Fourteenth Amendment right to due process by denying her an opportunity to correct her loan application." Order (Doc. No. 3) at 2. In due course, the defendants filed a motion to dismiss. (Doc. No. 6).

## II. Discussion

### A. Standing

Invoking Fed. R. Civ. P. 12(b)(1), defendants first argue that this case must be dismissed because the plaintiff lacks standing. Article III of the U.S. Constitution confines the federal courts to the adjudication of "actual, ongoing cases or controversies." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477, (1990). "One element of the case-or-controversy requirement" is that a plaintiff must establish Article III standing to sue. Raines v. Byrd, 521 U.S. 811, 818 (1997); see Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy.").

The plaintiff bears the burden of establishing standing. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1993). As previously noted, defendants premise their standing argument on Fed. R. Civ. P. 12(b)(1), "[t]he proper vehicle for challenging a court's subject-matter jurisdiction," including a claim that the plaintiff lacks Article III standing. See Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001); Anvar v. Tanner, No. 19-523-JJM-LDA, 2021 WL 3023025, at *2 (D.R.I. July 16, 2021).

In assessing standing under Rule 12(b)(1), the court "must take the complaint's well-pleaded facts as true and indulge all

reasonable inferences in the pleader's favor." Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016) (citation omitted). The court may also consider materials outside the complaint to the extent they shed light on the jurisdictional analysis. See Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002) ("While the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion . . . ."). Where, as here, "a Rule 12(b)(1) motion contests factual allegations of the complaint, the court must engage in judicial factfinding to resolve the merits of the jurisdictional claim." Ceboller-Bertran v. P.R. Aqueduct & Sewer Auth., No. 20-1096, 2021 WL 2699040, at *3 (1st Cir. July 1, 2021); see also Valentin, 254 F.3d at 364 (noting that "when a factbound jurisdictional question looms, a court must be allowed considerable leeway in weighing the proof, drawing reasonable inferences, and satisfying itself that subject-matter jurisdiction has attached.").

The "'irreducible constitutional minimum'" of Article III standing is well established: The "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, 136 S. Ct. at 1547 (quoting Lujan, 504 U.S. at 562. These requirements

ensure that the plaintiff has "a personal stake in the outcome of the controversy." Gill v. Whitford, 138 S. Ct. 1916, 1929 (2018) (citation and internal quotation marks omitted).

An injury in fact is the "'[f]irst and foremost' of standing's three elements." Spokeo, 136 S. Ct. at 1547 (citation omitted); see Griffin v. Dep't of Labor Fed. Credit Union, 912 F.3d 649, 653 (4th Cir. 2019) ("An injury in fact is an indispensable aspect of constitutional standing . . . ."). To satisfy the injury-in-fact requirement, the plaintiff must demonstrate "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Spokeo, 136 S. Ct. at 1548 (quotation marks and citation omitted). A particularized injury "must affect the plaintiff in a personal and individual way." Id. at 1548 (internal quotation marks omitted).

The plaintiff claims to have been injured by the DOR's determination that she was ineligible for a SELF grant and by its not affording her a subsequent opportunity to correct what she has described as a typographical error.

Defendants' standing argument is based on the fact that various documents - including tax returns and publicly filed business records - cast doubt on whether she applied for a SELF loan, and thus, with respect to her standing to sue, whether she has been injured by the defendants and whether a favorable

decision will redress her injury. Spokeo, 136 S. Ct. at 1547 (quoting Lujan, 504 U.S. at 563 (1993)). The court first recounts the documents upon which the parties rely, including those appended to the complaint as well as those submitted by the parties in connection with the pending motion.

1. Tax Returns

Tax returns and other related documents from 2019 appended to the complaint do not contain plaintiff's name, but instead that of an individual taxpayer named "Fharah Ladey." For example, an IRS Form 1040 – an individual tax return - identifies the taxpayer as "Fharah Ladey" and contains a redacted social security number. Compl. (Doc. No. 1) at 18. Also, an IRS Schedule 1 (Adjustments to Income) reiterates that "Fharah Ladey" is the individual "on Form 1040 or 1040-SR" and contains a redacted social security number. Id. at 20. Finally, several profit-and-loss statements ("Schedule C") identify "Fharah Ladey" as the sole proprietor of several other sole proprietorships. The presence of a redacted social security number on these statements suggests that "Fharah Ladey" is an individual. More importantly, however, there is no indication as to how these tax documents are relevant to plaintiff's lawsuit.

2. Bank Statements

Bank statements from September 2019 and January 2020[2] appended to the complaint denote the account holder as "[redacted] dba Farah Ladey." While these documents, unlike the tax returns, suggest that "Fharah Ladey" is a business, they do not demonstrate any connection to the plaintiff.

3. Affidavit

Plaintiff has submitted an affidavit from an unrelated suit pending in this court (Doc. No. 14-1), suggesting that she was an independent contractor doing work for "Fharah Ladey" (the business) and that she suffered financial loss when COVID-19 caused that business to lose money. While this affidavit might be probative of whether plaintiff qualified for a SELF grant, it does not provide any support for plaintiff's claim that she applied for a SELF grant, and thus is not probative of her standing to sue.

4. Letters from the State

Attached to the complaint are two letters from the State of New Hampshire. The first, dated July 24, 2020 from DOR, is addressed to "Fharah Ladey" and begins with the salutation, "Dear Fharah Ladey." (Doc. No. 1 at 10). The letter states

---

[2]While it is not clear to the court how a bank statement from January 2020 would support a claim of COVID-related business losses, it need not reach that issue.

that Fharah Ladey is ineligible for a SELF Grant because "Your business does not anticipate a loss of gross receipts from 2019 to 2020 due to COVID-19." Id.

The second letter, dated September 18, 2020, from Attorney Smith, is addressed to plaintiff and "Fharah Ladey African Food." It begins with the salutation "Dear Ms. Mogaji." (Doc. No. 1 at 11). The letter notes that on August 25, 2020, Ms. Mogaji requested in writing "an amendment to the Regulation and for the approval of [her] 'SELF' application." The letter from Attorney Smith reiterated that the application was denied "because it did not indicate a loss of gross receipts from 2019 to 2020 due to COVID-19." Id. The August 25, 2020 letter referenced in Attorney Smith's letter has not been provided to the court.

5. Defendants' Declaration

In a declaration (Doc. No. 15-1), DOR Information Systems Management System Director Lisa J. Crowley avers that a search of the relevant database indicated that "[t]here is no record . . . of a person or business with the name 'Mogaji' having filed a SELF Grant Application." Crowley Decl. (Doc. No. 15-1) ¶ 3.

Together with the Crowley Declaration, the defendants provided, under seal pursuant to state records laws, a SELF application submitted on behalf of a business named "Fharah Ladey d/b/a Softcharms" on July 9, 2020. (Doc. No. 16). The

application indicates that the personal contact for this business is an individual named Ladefara Gem, and that the business owner is Fharah Ladey, whose social security number is redacted in the exhibit. Id. at 4. The application further indicates that the business is a beauty salon, and that it expected no change in gross receipts between 2019 and 2020, as the figure "50,000" was entered in two boxes labelled "2019 Actual Gross Receipts" and "Estimated 2020 Actual Gross Receipts." Id. at 6. The "authorized signor" of the application is "Ladefara Gem." Id. at 8. Ms. Mogaji's name is not on this application.

6. Plaintiff's argument

In response to the defendants' claim that she lacks standing to sue, the plaintiff asserts that she was a contractor with Forsyte Von Buren & Company (an entity referenced above, supra, at 10, as one of the sole proprietorships of which Fharah Ladey was a sole proprietor). Pltf. Mem. Re: Standing (Doc. No. 14) at 2. She further asserts that she lost income as a result of Forsyte Von Buren & Company's financial demise. Id. at 1-2. Plaintiff also attached a copy of what she describes as her SELF loan application. (Doc. No. 14-3). In fact, the referenced two-page document appears to be only a small portion of an application. This excerpt does not include the name of the applicant, and several questions and answers – including the

pivotal questions related to income in 2019 and expected income in 2020 - are not included. Id. As such, this document has no probative value to the court's standing inquiry.

Ultimately, the plaintiff has not met her burden to demonstrate that she has standing to sue. While she asserts in her complaint that the defendants rejected her loan application, that bare assertion is not only unsupported, but also directly contradicted by the documents before the court, including many that, as described above, the plaintiff herself provided. There is no information before the court showing that Ms. Mogaji applied for the grant at issue. As such, the court finds that plaintiff has suffered no injury that can be redressed by the relief requested. She therefore lacks standing to sue. Cf. Deutsch Bank Nat. Trust. Co. v. Fadili, No. 09-cv-385-LM, 2011 WL 4703707, at *9 (D.N.H. Oct. 4, 2011) (explaining, in breach of contract action, that "the general rule [is] that a non-party to a contract has no remedy for breach of contract.") (quoting Brooks v. Trustees of Dartmouth Coll., 20 A.3d 890, 900 (N.H. 2011)). The district judge should therefore dismiss this suit because the plaintiff lacks standing to sue.

B. Failure to State a Claim

1. Protected Property Interest

Relying on Fed. R. Civ. P. 12(b)(6), the defendants also argue that, even if Ms. Mogaji had standing to sue, dismissal is

warranted because the complaint fails to state a claim for which relief can be granted.

To defeat a Rule 12(b)(6) motion, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Martinez v. Petrenko, 792 F.3d 173, 179 (1st Cir. 2015). This standard "demands that a party do more than suggest in conclusory terms the existence of questions of fact about the elements of a claim." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 81 (1st Cir. 2013). In ruling on such a motion, the court accepts as true all well-pleaded facts set forth in the complaint and draws all reasonable inferences in the plaintiff's favor. See Martino v. Forward Air, Inc., 609 F.3d 1, 2 (1st Cir. 2010). The court may also consider judicially noticed documents, matters of public record, and documents introduced by the plaintiff in her objection to the motion to dismiss or concessions in that objection, without converting the 12(b)(6) motion into a motion for summary judgment. See Breiding v. Eversource Energy, 939 F.3d 47, 49 (1st Cir. 2019); Greene v. Rhode Island, 398 F.3d 45, 49 (1st Cir. 2005).

On preliminary review, see LR 4.3(d) and 28 U.S.C. § 1915(e)(2), the court liberally construed the allegations in the Complaint as invoking 42 U.S.C. § 1983 and claiming that the defendants violated plaintiff's right to procedural due process

when it denied her an opportunity to correct a typographical error in her application. Order (Doc. No. 3) at 2.

"To state a procedural due process claim under § 1983, the plaintiff must allege facts which, if true, establish that the plaintiff (1) had a property interest of constitutional magnitude and (2) was deprived of that property interest without due process of law." Clukey v. Town of Camden, 717 F.3d 52, 55-56 (1st Cir. 2013) (citing García-Rubiera v. Fortuño, 665 F.3d 261, 270 (1st Cir. 2011)).

"The threshold issue in a procedural due process action is whether the plaintiff had a constitutionally protected property interest at stake." Clukey, 717 F.3d at 55 (quoting Mard v. Town of Amherst, 350 F.3d 184, 188 (1st Cir. 2003)). Here, the defendants first assume that, in general, an individual can have a protected interest in the type of grant at issue in this case. But, reiterating the facts – or lack thereof – upon which the court relied to assess plaintiff's lack of standing, the defendants assert that the plaintiff has failed to allege facts showing that she has such an interest. Def. Mem. (Doc. No. 6-1) at 15-16. The court's standing analysis, however, included documents – such as the Crowley Declaration (Doc. No. 15-1) and the "Fharah Ladey" grant application – that exceed the boundaries of what the court will consider in a motion to dismiss under Rule 12(b)(6). See Breiding, 939 F.3d at 49. The

court therefore declines apply its standing analysis to the portion of defendants' motion premised on Rule 12(b)(6).

Defendants also argue that plaintiff has failed to plead that she met the grant's qualification requirements, including, inter alia, whether her business was not in bankruptcy, had been in operation for the requisite time period, and did not exceed the maximum allowable gross receipts. Def. Mem. (Doc. No. 6-1). In her opposition to defendants' motion, however, the plaintiff indicated that she did satisfy those criteria. See Pltf. Mem. (Doc. No. 10) at 2. At this stage of the proceedings, the court therefore declines to recommend dismissal on the basis that the plaintiff has failed to allege a protected property interest. Nevertheless, even assuming that the plaintiff has adequately alleged a property interest, the complaint and documents properly before the court demonstrate that she received all the process she was due.

2. Process Due

Assuming the plaintiff has sufficiently alleged that she had a protected interest in receiving a SELF grant, the court's analysis turns to a determination of "what process was due." Zell v. Ricci, 957 F.3d 1, 8 (1st Cir. 2020) (citing Goss v. López, 419 U.S. 565, 577 (1975)). Ultimately, "due process is flexible and calls for such procedural protections as the

particular situation demands." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

The due process analysis turns on "three distinct factors." Matthews v. Eldridge, 424 U.S. 319, 334 (1976).

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

Id.

"The fundamental requisite of due process of law is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Id. at 333 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).

Certainly, given the scope and impact of the COVID-19 pandemic, Ms. Mogaji's private interest in a grant designed to help keep small businesses afloat is significant. But her due process claim falters on the remaining Eldridge factors. As noted above, supra, at 6-7, applicants had clear notice that if they were deemed ineligible for a SELF Grant, they could file an appeal with an explanation and documentation to substantiate their claims. Id. Applicants were also notified that no appeals regarding any dollar amounts reported on an application would be considered. Id. Applicants were notified, however, that they

could make changes to their applications up until the application period closed on July 17. Id. This procedure is adequate to protect against erroneous deprivations and, given the economic impact of the pandemic and the need to distribute funding to qualified applicants in a timely and organized manner, the administrative burdens of treating plaintiff's application differently from all others would be considerable.

A more elaborate appeals system is not required. Courts have found streamlined procedures sufficient to comport with due process under many circumstances. See, e.g., Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 14 (1978) (finding that an "informal administrative remedy" of meeting with a designated employee of the utility company to review billing errors was sufficient due process); Bell v. Burson, 402 U.S. 535, 540 (1971) ("Clearly ... the inquiry into fault or liability requisite to afford the licensee due process need not take the form of a full adjudication of the question of liability."); Pinnacle Armor, Inc. v. United States, 648 F.3d 708, 717 (9th Cir. 2011) (finding that the federal government did not violate contractor's right to due process when it revoked a product's certification but gave contractor opportunity to submit written evidence following revocation decision); Frandsen v. Univ. Of Alaska Fairbanks, No. 4:20-cv-00016-JWS, 2021 WL 1966821, at *5-6 (D. Alaska May 17, 2021) (finding that terminated employee

received due process where she was provided three-months' notice and an opportunity to present a written objection to the decision and provide any evidence she thought relevant); AMI Affiliates v. U.S. Dep't of Hous. & Urban Dev., No. 94-cv-7194, 1995 WL 611324, at *5 (E.D. Pa. Oct. 13, 1995) (finding no deprivation of due process where plaintiffs had the opportunity to object to HUD's proposed foreclosure through written objections as well as an informal hearing).

Here, while the consequences of entering the incorrect business income figures were serious, "fundamental fairness [only] requires that an exacting application standard, enforced by the severe sanction of dismissal . . . be accompanied by full and explicit notice of all prerequisites for such consideration." JEM Broad. Co. v. F.C.C., 22 F.3d 320, 329 (D.C. Cir. 1994) (quoting Salzer v. F.C.C., 778 F.2d 869, 871-72 (D.C. Cir. 1985)).

Against this factual and legal backdrop, the court finds that the State's SELF Grant application and appeal mechanism comported with due process. The defendants are, therefore, also entitled to dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

## II. Conclusion

For the foregoing reasons, the district judge should grant the defendants' motion to dismiss (Doc. No. 6) because the plaintiff lacks standing to sue, or, in the alternative, because

the complaint fails to state a claim for relief.[3] Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file objections within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

Andrea K. Johnstone
United States Magistrate Judge

July 29, 2021

cc: Martha Mogaji, pro se

[3]Having found that dismissal is warranted under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the court does not reach defendants immunity and misjoinder arguments.